EDWARD L. FREED, Plaintiff-Appellant, v. GEORGE H. RYAN, Secretary of State, Defendant-Appellee.

First District (6th Division)   No. 1—97—0612

Opinion filed November 30, 1998.

Student's Legal Assistance Office, of Northern Illinois University, of De Kalb (Donald Henderson, Jr., of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellant.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Edward Freed appeals an order of the circuit court of Cook County denying his petition for administrative review of an order by defendant Illinois Secretary of State George H. Ryan. The administrative order denied plaintiff's petition to rescind the suspension of plaintiff's driving privileges.

The record on appeal indicates the following facts. Freed was a student at Northern Illinois University in De Kalb, Illinois. On May 14, 1995, plaintiff, along with friends, attempted to enter the American Exchange Tavern in De Kalb. Plaintiff, who was 19 years old, presented the bouncer an Illinois state identification card for Joseph Zito, who the record shows was over 24 years old at the time.

The bouncer denied plaintiff entry to the tavern. As plaintiff and his friends spoke with the bouncer, a De Kalb police officer drove by the tavern. The bouncer flagged down the police officer, who asked plaintiff for the identification card. The police officer issued a citation to plaintiff based on a De Kalb ordinance, stating that the officer had reason to believe that Freed, as "a person under 21 yrs. of age, did

represent that s/he is of age for the purpose of purchasing accepting/ receiving alcoholic liquor."

The officer also confiscated the state identification card. According to the police report, plaintiff told the officer that Zito had given him the identification card, but he later told the police that he did not know Zito. Plaintiff later testified that he did not know Zito but had purchased the card from a friend at a party.

On July 10, 1995, plaintiff pleaded guilty to violating the ordinance, was fined $150, and placed under supervision for one year. On August 27, 1995, the De Kalb police department notified the Illinois Secretary of State (Secretary) that plaintiff had misused Zito's identification card. The Secretary notified plaintiff by a letter dated September 5, 1995, that his driver's license and privileges would be suspended for one year, pursuant to section 6—206(a)(10) of the Illinois Vehicle Code (625 ILCS 5/6—206(a)(10) (West 1994)) (Code), which authorizes the suspension of driving privileges where a person "[h]as possessed, displayed, or attempted to fraudulently use any license, identification card, or permit not issued to the person." The Secretary also sent plaintiff an order of suspension for one year, effective October 30, 1995.

On November 1, 1995, the Secretary received plaintiff's request for a formal hearing to contest the suspension. On January 8, 1996, a formal hearing on the matter was held before a hearing officer for the Secretary. Plaintiff argued that section 6—206(a)(10) of the Code was unconstitutional because it lacked a rational basis and also that the suspension of driving privileges violated his right not to be subjected to double jeopardy. The hearing officer rejected plaintiff's arguments and recommended denying his petition to rescind the suspension. On March 26, 1996, the Secretary adopted the hearing officer's recommendation.

On April 30, 1996, plaintiff filed a complaint for administrative review in the circuit court of Cook County. On January 8, 1997, following the submission of the record, briefing and argument of the issues, the trial court affirmed the decision of the Secretary. Plaintiff filed a timely notice of appeal to this court.

I

■ On appeal, plaintiff argues that the suspension of his driving privileges was unconstitutional. All statutes are presumed to be constitutional. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 419, 665 N.E.2d 795, 801 (1996). The party challenging the validity of a statute bears the burden of clearly establishing any constitutional invalidity. *Brown's Furniture, Inc.*, 171 Ill. 2d at 419-20, 665 N.E.2d at

801. This court must construe legislative enactments so as to affirm their constitutional validity if it is reasonably possible to do so. *Brown's Furniture, Inc.*, 171 Ill. 2d at 420, 665 N.E.2d at 801. We review *de novo* the circuit court's decision with respect to the constitutionality of the Act. *Brown's Furniture, Inc.*, 171 Ill. 2d at 420, 665 N.E.2d at 801.

## II

Plaintiff argues that section 6—206(a)(10) of the Code violates his right to due process. The constitutional provisions implicated are the due process clauses of the federal and state constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. However, the case before us does not implicate procedural due process rights; rather, plaintiff contends that the statute violates due process because it is an unreasonable and arbitrary exercise of the state's police power. *People v. Lindner*, 127 Ill. 2d 174, 179-80, 535 N.E.2d 829, 831 (1989).

■ It is clear that the due process clauses apply to the deprivation of a driver's license by the state. *Bell v. Burson*, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589 (1971); *People v. Orth*, 124 Ill. 2d 326, 334, 530 N.E.2d 210, 214 (1988). However, a person's property interest in a driver's license, while important, is not fundamental in the constitutional sense. See *Orth*, 124 Ill. 2d at 335, 530 N.E.2d at 214. Accordingly, the appropriate standard of review is the rational basis test. *Lindner*, 127 Ill. 2d at 179, 535 N.E.2d at 831.

■ Under the rational basis test, a statute must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. *Lindner*, 127 Ill. 2d at 180, 535 N.E.2d at 831. An alternative formulation of the standard is that a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Lindner*, 127 Ill. 2d at 180, 535 N.E.2d at 831, citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 368, 489 N.E.2d 1374, 1382 (1986). When applying the rational basis test, a law will be upheld if there is any conceivable basis for doing so. *E.g., People v. Hamm*, 149 Ill. 2d 201, 216, 595 N.E.2d 540, 546 (1992), citing *McGowan v. Maryland*, 366 U.S. 420, 426, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105 (1961). Legislation may be based on rational speculation unsupported by admissible evidence or empirical data. See *Cutinello v. Whitley*, 161 Ill. 2d 409, 421-22, 641 N.E.2d 360, 365 (1994).

Plaintiff relies heavily on *Lindner*, in which the defendant, who previously had been convicted of criminal sexual assault and aggravated criminal sexual abuse, challenged automatic revocation of his

driver's license pursuant to a prior version of section 6—205(b)(2) of the Code. The supreme court first concluded that the public interest intended to be protected by the Code was the safe and legal operation and ownership of motor vehicles. *Lindner*, 127 Ill. 2d at 182, 535 N.E.2d at 833. The court then held that "[b]ecause a vehicle was not involved in any way in the commission of the offenses for which defendant was convicted, the revocation of his license [bore] no relationship, much less a reasonable one, to the public interest \*\*\* identified." *Lindner*, 127 Ill. 2d at 182-83, 535 N.E.2d at 833.

The *Lindner* court rejected the State's argument that the court must find other purposes for the Code. *Lindner*, 127 Ill. 2d at 183-84, 535 N.E.2d at 833. However, the court went on to consider the other statutory purposes suggested by the State. The *Lindner* court rejected the argument that the statute served the purpose of punishment, as such a punishment would remain arbitrary under the court's prior analysis. *Lindner*, 127 Ill. 2d at 184-85, 535 N.E.2d at 833. *Lindner* also holds that a summary suspension of driving privileges before a trial on the merits is not punishment. *Lindner*, 127 Ill. 2d at 184-85, 535 N.E.2d at 833. We note that Freed's arguments that suspension of his driving privileges violates his right not to be subject to double jeopardy or constitutes a disproportionate penalty fail for this reason.

The court also rejected the argument that the statute served the purpose of deterrence, as all but one of the sex and drug offenses listed in the statute were felonies punishable by imprisonment. *Lindner*, 127 Ill. 2d at 185, 535 N.E.2d at 834. The court further held that the State's arguments regarding other proffered purposes were waived and meritless. *Lindner*, 127 Ill. 2d at 185, 535 N.E.2d at 834. Freed notes that this court followed *Lindner* in *People v. Lawrence*, 206 Ill. App. 3d 622, 565 N.E.2d 322 (1990), which invalidated another portion of 6—205(b)(2) of the Code requiring the revocation of driving privileges for those convicted of unlawful delivery of a controlled substance.

■ We begin our analysis of the statute with the premise that the primary public interest intended to be protected by the Code is the safe and legal operation and ownership of motor vehicles. A specific manifestation of this interest is the Illinois legislature's express declaration in the Code that drivers impaired by alcohol or drugs pose a threat to "public safety and welfare," and that the suspension of driving privileges represents an appropriate means to deter and remove such drivers from the highway. 625 ILCS 5/6—206.1 (West 1994). Thus, it is illegal to drive while under the influence of alcohol. 625 ILCS 5/11—501 (West 1994). Indeed, it is illegal for a driver to even transport alcohol in the passenger area of his or her car, unless the alcohol is in its original container with an unbroken seal. 625 ILCS 5/11—502 (West 1994).

The Code evinces a heightened level of concern with such offenses when committed by persons under 21 years of age. For example, the Code provides that the license of a person under 21 years of age may be suspended if that person has a breath- or blood-alcohol concentration in excess of *zero*. 625 ILCS 5/11—501.8 (West 1994). A person under 21 years of age transporting open liquor in the passenger area of an automobile, unlike an older driver, is subject to revocation or suspension of driving privileges for a first offense. 625 ILCS 5/11—502(f) (West 1994). This concern explains why the licenses of persons under 21 years of age are legally required to be "of a distinct nature" from those of older drivers. 625 ILCS 5/6—110(e) (West 1994). Moreover, while we do not rely on other statutes in examining the challenged provision of the Code, we note that the policy evident in the Code is consistent with the Liquor Control Act of 1934, which generally bars alcohol from being provided to or consumed by persons under 21 years old, provides in part that a driver's license may be used as evidence that a recipient of alcohol is of legal age, and outlaws the possession or use of false identification by persons under 21 years old to attempt to procure alcohol. See 235 ILCS 5/6—16(a), 6—20 (West 1994).

The governmental goals of preventing drunken driving and driving by persons under 21 years old who have consumed alcohol, are clearly legitimate under *Lindner*. The statutory declaration that suspension of driving privileges is a legitimate means deterring and removing dangerous drivers from the highway is not irrational. "[I]t is a matter of common knowledge that solicitation of intoxicating drinks is generally associated with conduct of various types in which the exercise of the police power is vitally essential for protection of the public welfare." *Jamaica Inn, Inc. v. Daley*, 29 Ill. App. 3d 770, 776, 331 N.E.2d 228, 232 (1975). The legislature clearly and rationally has concluded that persons under 21 years old driving after consuming alcohol is one such mode of misconduct.

■ The legislature could rationally speculate that license holders under 21 years old may use false identification in an attempt to gain access to alcohol and that such conduct would lead on balance to an increase in drunken driving or driving by persons under 21 years old who have consumed alcohol. Unlike the sex crimes at issue in *Lindner*, the offenses the state seeks to deter here are directly related to the safe and legal operation of motor vehicles. Thus, we conclude that the legislature could rationally seek to deter these offenses by providing for the suspension of the driving privileges of a license holder under 21 years old who uses false identification in an attempt to consume alcohol.

In this case, the citation issued to plaintiff by the police stated that there was reason to believe that plaintiff was under 21 years of age and represented that he was of age for the purpose of purchasing, accepting or receiving alcoholic liquor. Although plaintiff testified at his hearing that he did "not necessarily" intend to drink with his friends in the tavern, the record shows that plaintiff had pleaded guilty to violating the De Kalb ordinance. Given the facts and circumstances presented by the record in this case, we conclude that section 6—206(a)(10) of the Code is constitutional as applied to plaintiff.

We note that plaintiff did not specify whether he was attacking the statute as applied or on its face. However, a facial challenge to legislation must establish that *no* set of circumstances exists under which the statute would be valid; the "overbreadth" doctrine is not recognized outside the limited context of the first amendment. *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987). As the statute is constitutional as applied to plaintiff, a facial challenge would also fail.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ZWICK and QUINN, JJ., concur.