Docket Nos. 108289, 108290 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ZACHARY BOECKMANN, Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHELSEY MASCHOFF, Appellee.

*Opinion filed June 24, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald concurred in the judgment and opinion.

Justice Garman specially concurred, with opinion, joined by Justice Thomas.

Justice Freeman dissented, with opinion, joined by Justice Burke.

Justice Karmeier took no part in the decision.

## OPINION

The circuit court of Clinton County declared unconstitutional section 6–206(a)(43) of the Illinois Vehicle Code (625 ILCS 5/6–206(a)(43) (West 2008)) on due process grounds. As applied in this case, section 6–206(a)(43) requires suspension of driving privileges if a person receives court supervision for unlawful consumption of alcohol under 21 years of age. Illinois Secretary of State Jesse White (Secretary) appealed the circuit court's judgment

directly to this court under Supreme Court Rule 603 (134 Ill. 2d R. 603). For the following reasons, we reverse the circuit court's judgment declaring section 6–206(a)(43) unconstitutional.

## I. BACKGROUND

The defendants in this consolidated appeal, Zachary R. Boeckmann and Chelsey M. Maschhoff, were each charged with unlawful consumption of alcohol by a person under 21 years of age (235 ILCS 5/6–20(e) (West 2008)). The defendants filed motions to declare unconstitutional sections 6–206(a)(38) and (a)(43) of the Vehicle Code (625 ILCS 5/6–206(a)(38), (a)(43) (West 2008)). Those sections generally authorize the Secretary of State to suspend or revoke a defendant's driving privileges upon conviction or disposition of court supervision for the charged offenses.

Defendants alleged sections 6–206(a)(38) and (a)(43) violated their constitutional rights to due process and equal protection of the law. Defendants pled guilty to unlawful consumption of alcohol as charged. The trial court placed them on court supervision for 90 days and, the following day, declared sections 6–206(a)(38) and (a)(43) unconstitutional.

After those orders were filed, the Secretary entered an appearance and the trial court granted him leave to file petitions to vacate the findings of unconstitutionality. In his petitions, the Secretary asserted he did not receive notice of the defendants' motions seeking a declaration that the statute was unconstitutional. In response to the petitions, the trial court vacated its orders declaring sections 6–206(a)(38) and (a)(43) unconstitutional and allowed the defendants to file supplemental motions challenging the constitutionality of the statute.

Defendants then filed motions alleging sections 6–206(a)(38) and (a)(43), as applied, violate the due process and equal protection clauses of the United States and Illinois Constitutions as well as the proportionate penalties clause of the Illinois Constitution. The Secretary stipulated that under section 6–206(a)(43) of the Vehicle Code, he was required to suspend for three months the driving privileges of any person receiving court supervision for a violation of

-2-

section 6–20 of the Liquor Control Act (235 ILCS 5/6–20 (West 2008)).

The trial court subsequently found section 6–206(a)(43) unconstitutional on due process grounds as applied to the defendants. The trial court held this court's decision in *People v. Lindner*, 127 Ill. 2d 124 (1989), controlled because a vehicle was not involved in the commission of the offenses. The defendants' other constitutional challenges based on the equal protection and proportionate penalties clauses were rejected by the trial court. The trial court made the additional findings mandated by Supreme Court Rule 18 (210 Ill. 2d R. 18), when a statute is declared unconstitutional.

The Secretary appealed the trial court's orders declaring section 6–206(a)(43) unconstitutional directly to this court as permitted by Supreme Court Rule 603 (134 Ill. 2d R. 603).

## II. ANALYSIS

The Secretary contends the trial court erred in finding section 6–206(a)(43) violates due process as applied to the defendants. According to the Secretary, suspension of the defendants' driving privileges for unlawful consumption of alcohol bears a rational relationship to the legitimate governmental interest in highway safety. The Secretary maintains that preventing young people who consume alcohol from driving is a reasonable means of furthering the interest in highway safety. The Secretary also argues the suspension of defendants' driving privileges under section 6–206(a)(43) is a reasonable means of promoting the legitimate public interest in deterring underage consumption of alcohol.

Citing this court's decision in *Lindner*, defendants contend that suspending their driving privileges does not bear a rational relationship to the public interest in the safe operation of motor vehicles because no vehicle was involved in the commission of their offenses. Defendants further argue suspension of driving privileges in all cases of underage consumption of alcohol is not a reasonable means of promoting the public interest in highway safety.

We begin by noting that statutes are presumed constitutional. *People v. Williams*, 235 Ill. 2d 178, 199 (2009). To rebut the presumption, the party challenging the statute must clearly establish

-3-

a constitutional violation. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009). This court must construe a statute in a manner upholding its constitutionality if reasonably possible. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 239 (2009). Accordingly, we will resolve any doubt on the construction of a statute in favor of its validity. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). The constitutionality of a statute is reviewed *de novo*. *In re Lakisha M.*, 227 Ill. 2d 259, 263 (2008).

This court has held a driver's license is a nonfundamental property interest. *Lindner*, 127 Ill. 2d at 179. When a statute does not impact a fundamental constitutional right, the applicable standard for reviewing whether it conforms with substantive due process is the rational basis test. *Williams*, 235 Ill. 2d at 205. Generally, a statute violates the constitutional guarantee of due process under the rational basis test if it does not bear a rational relationship to a legitimate legislative purpose, or is arbitrary or discriminatory. *Napleton*, 229 Ill. 2d at 307; *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 122 (2004); *Lindner*, 127 Ill. 2d at 180. In applying the rational basis test, we must identify the public interest the statute is intended to protect, determine whether the statute bears a rational relationship to that interest, and examine whether the method chosen to protect or further that interest is reasonable. *Lindner*, 127 Ill. 2d at 180.

Rational basis review is highly deferential, but it is not "toothless." *People v. Jones*, 223 Ill. 2d 569, 596 (2006), quoting *Mathews v. De Castro*, 429 U.S. 181, 185, 50 L. Ed. 2d 389, 394, 97 S. Ct. 431, 434 (1976). Legislation must be upheld if there is a conceivable basis for finding it is rationally related to a legitimate state interest. *Stokovich*, 211 Ill. 2d at 126. The legislature's judgments in drafting a statute are not subject to judicial fact finding and "may be based on rational speculation unsupported by evidence or empirical data." *Arangold v. Zehnder*, 204 Ill. 2d 142, 147 (2003).

We must first determine the public interest section 6–206(a)(43) is intended to protect. In examining the public interest of similar Vehicle Code provisions in *Lindner*, this court considered the Vehicle Code as a whole, the substantive provisions of the challenged sections, and the Vehicle Code's statement of purpose. *Lindner*, 127 Ill. 2d at 181-82. We observed that the stated purpose of the Vehicle Code

contained in section 6–204(a) is preventing people from driving if they demonstrate an unfitness to operate a motor vehicle safely. *Lindner*, 127 Ill. 2d at 182. Further, the challenged statute sections generally enumerate offenses connected to operating or owning a vehicle safely and legally. *Lindner*, 127 Ill. 2d at 182. We concluded, therefore, that the challenged provisions were intended to protect the public interest in "the safe and legal operation and ownership of motor vehicles." *Lindner*, 127 Ill. 2d at 182.

The statement of purpose in section 6–204 is still directed at preventing people from driving after they have shown an unfitness to operate a vehicle safely. 625 ILCS 5/6–204(a) (West 2008). Additionally, the statute section challenged here describes offenses and behavior largely connected to operating a motor vehicle safely and legally. 625 ILCS 5/6–206 (West 2008). Accordingly, as in *Lindner*, we conclude section 6–206 is intended to promote the safe and legal operation and ownership of motor vehicles.

We must, therefore, determine whether section 6–206(a)(43) bears a reasonable relationship to the public interest in the safe and legal operation and ownership of motor vehicles. As applied in this case, section 6–206(a)(43) provides for suspension of driving privileges when a person has received court supervision for underage consumption of alcohol. 625 ILCS 5/6–206(a)(43) (West 2008). The statute will be upheld if a conceivable basis exists for finding it rationally related to the identified legitimate public interest. See *Stokovich*, 211 Ill. 2d at 126.

Here, the General Assembly may have believed that a young person who has a driver's license and consumes alcohol illegally may take the additional step of driving after consuming alcohol. It is reasonable to believe a young person disobeying the law against underage consumption of alcohol may also lack the judgment to decline to drive after drinking. Preventing young people from driving after consuming alcohol unquestionably furthers the public interest in the safe and legal operation of motor vehicles.

Defendants, nonetheless, contend this court's decision in *Lindner* compels a finding that section 6–206(a)(43) violates due process. According to defendants, *Lindner* held that suspending driving privileges violates the constitutional guarantee of due process if a vehicle was not involved in the commission of the offense.

In *Lindner*, the dispute focused on identifying the public interest the challenged statute was intended to protect. *Lindner*, 127 Ill. 2d at 180. This court noted that the State apparently conceded the unconstitutionality of the statute if the defendant's argument on the statute's purpose were accepted. *Lindner*, 127 Ill. 2d at 180-81. We agreed with the defendant's argument that the statute served the public interest in the safe and legal operation and ownership of motor vehicles. *Lindner*, 127 Ill. 2d at 182. Without any argument from the State on the point, we then concluded revocation of the defendant's driver's license did not bear a reasonable relationship to that public interest because a vehicle was not involved in the commission of the defendant's sex offenses. *Lindner*, 127 Ill. 2d at 182-83.

Defendants assert this court should follow "[t]he principle in *Lindner* that if no car is involved, like here, then to suspend driving privileges would violate due process." Defendants, however, rely on a narrow reading of *Lindner*. We have subsequently explained the rationale in *Lindner*, stating "[t]here was no rational relationship between sex offenders and safe driving, and on that basis the statute was found unconstitutional." *People v. Adams*, 144 Ill. 2d 381, 391 (1991), citing *Lindner*, 127 Ill. 2d at 183. We have further explained that in *Lindner*, the revocation of the defendant's driver's license did not bear a rational relationship to the public interest to be served because the defendant's crimes "neither involved a motor vehicle nor bore any rational relationship to his ability to drive a motor vehicle safely." *Jones*, 223 Ill. 2d at 604, citing *Lindner*, 127 Ill. 2d at 182-83. Accordingly, the rationale in *Lindner* is broader than simply determining whether a vehicle was involved in the offense. Rather, the critical determination is whether the revocation of driving privileges bears a rational relationship to the public interest in the safe operation of motor vehicles.

In *Lindner*, there was no connection between the defendant's sex offenses and his ability to drive a motor vehicle safely. In contrast, defendants' underage consumption of alcohol would certainly impact their ability to drive a motor vehicle safely. The legislature could have rationally believed young people who have a driver's license and consume alcohol illegally may also drive after consuming alcohol, regardless of whether a motor vehicle is involved in the charged offense. On this point, we note that the appellate court has held

suspension of driving privileges for the use of false identification in an attempt to obtain alcohol is rationally related to the safe and legal operation of a motor vehicle. *Freed v. Ryan*, 301 Ill. App. 3d 952, 957 (1998). The appellate court held the legislature could rationally speculate that licensees under 21 years of age may use false identification to obtain alcohol, leading on balance to an increase in driving under the influence or driving after consuming alcohol. *Freed*, 301 Ill. App. 3d at 957. See also *Horvath v. White*, 358 Ill. App. 3d 844, 852-53 (2005) (distinguishing *Lindner* and holding suspension of driver's license for possession of another's identification card is rationally related to the safe and legal operation of motor vehicles, particularly when the identification card reflected a legal drinking age). We likewise conclude that suspension of defendants' driving privileges for underage consumption of alcohol bears a rational relationship to the safe and legal operation of motor vehicles.

Defendants also contend that suspending their driving privileges is not a reasonable method of protecting the public interest because they had no plans to drive after consuming alcohol. As we have found, there is a rational relationship between suspending a person's driver's license for underage consumption of alcohol and the safe and legal operation of motor vehicles, regardless of whether a motor vehicle is involved in the particular offense. The legislature may reasonably determine a young person consuming alcohol under the legal age may also drive after drinking. Preventing young people from driving after consuming alcohol furthers the public interest in the safe and legal operation of motor vehicles. We, therefore, conclude that suspension of defendants' driving privileges for underage consumption of alcohol is a reasonable method of promoting the public interest despite the absence of a motor vehicle or plans to drive in these circumstances.

We further note that courts from other jurisdictions have upheld similar statutes against substantive due process challenges. See *State v. Bennett*, 142 Idaho 166, 171-72, 125 P.3d 522, 527-28 (2005) (rejecting substantive due process challenge to statute requiring driver's license suspension for underage purchase, possession, or consumption of alcohol); *State v. Niedermeyer*, 14 P.3d 264, 268 (Alaska 2000) (rejecting substantive due process challenge to statute requiring revocation of driving privileges for underage consumption of alcohol); *People v. Valenzuela*, 3 Cal. App. 4th Supp. 6, 10, 5 Cal.

Rptr. 2d 492, 494 (1991) (rejecting substantive due process challenge to statute requiring suspension of driving privileges for underage possession of alcohol); *Commonwealth v. Strunk*, 400 Pa. Super. 25, 33-34, 582 A.2d 1326, 1330 (1990) (rejecting substantive due process challenge to statute requiring driver's license suspension for underage possession or consumption of alcohol). Those courts have generally recognized a rational relationship between suspending a person's driver's license for underage possession or consumption of alcohol and the governmental interest in highway safety. See *Bennett*, 142 Idaho at 172, 125 P.3d at 528; *Niedermeyer*, 14 P.3d at 267-68; *Valenzuela*, 3 Cal. App. 4th Supp. at 9-10, 5 Cal. Rptr. 2d at 493-94. While these decisions are not binding on this court, they may be considered as persuasive authority. See *People ex rel. O'Malley v. 6323 North LaCrosse Avenue*, 158 Ill. 2d 453, 458-59 (1994); *Cooper v. Hinrichs*, 10 Ill. 2d 269, 275 (1957).

The special concurrence asserts *Lindner* was wrongly decided and should be overruled because it defined the public purpose of the statute too narrowly. The parties do not ask this court to overrule *Lindner* or present any argument on that issue, however. Under the doctrine of *stare decisis*, this court's prior decisions should not be overturned absent "good cause" or "compelling reasons." *People v. Colon*, 225 Ill. 2d 125, 146 (2007). *Lindner* engaged in a detailed analysis of the statute's purpose that has been accepted for more than 21 years. *Lindner* should not be overruled without the benefit of a developed argument by the parties on the issue.

We need not overrule *Lindner* to conclude that the license suspensions in this case do not offend due process. We need only apply the highly deferential rational basis standard to decide that the license suspensions do not violate defendants' constitutional rights to due process. The rational basis test is satisfied if there is a conceivable basis for finding a statute rationally related to a legitimate state interest. *Stokovich*, 211 Ill. 2d at 126. As discussed above, the weight of authority from our appellate court and other jurisdictions supports a finding that suspension of driving privileges for underage consumption of alcohol bears a rational relationship to the legitimate state interest in highway safety.

Accordingly, without any argument from the parties on the issue, we should not reach *Lindner*. Moreover, overruling *Lindner* will not

affect the result in this case. Of course, parties in a future case may argue that *Lindner* should be overruled and this court may properly consider the issue at that time. We only conclude that it is not appropriate to address the issue in this case where the parties have not raised or argued it.

In sum, we conclude that suspending defendants' driving privileges for underage consumption of alcohol is rationally related to the legitimate public interest in the safe and legal operation of motor vehicles. Section 6–206(a)(43), as applied in this case, provides a reasonable method of furthering that interest. Accordingly, section 6–206(a)(43) does not violate defendants' constitutional rights to substantive due process.

Defendants also argue section 6–206(a)(43) is unconstitutionally arbitrary as applied because the Secretary does not exercise the discretion granted by the statute in determining whether to suspend a person's driving privileges for underage consumption of alcohol. Rather, the Secretary issues a suspension in every case. Defendants contend the Secretary's failure to exercise discretion is arbitrary and results in a due process violation.

In his reply to this argument, the Secretary contends he does not have discretion in determining whether to suspend a person's driving privileges under section 6–206(a)(43). The Secretary maintains section 6–206(a)(43) requires a three-month suspension when a person receives court supervision for underage consumption of alcohol.

Defendants' argument is premised on the construction of section 6–206(a)(43) as granting the Secretary discretion in determining whether to suspend a person's driving privileges for underage consumption of alcohol. Accordingly, this argument presents a question of statutory construction subject to *de novo* review. See *People v. Lewis*, 234 Ill. 2d 32, 44 (2009). The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning. *People v. Cardamone*, 232 Ill. 2d 504, 512 (2009).

Section 6–206 of the Vehicle Code is entitled, "Discretionary authority to suspend or revoke license or permit; Right to a hearing." 625 ILCS 5/6–206 (West 2008). Section 6–206 generally authorizes the Secretary to issue a suspension or revocation of driving privileges in 45 enumerated circumstances. In many of those circumstances, the statutory language is purely discretionary. For instance, subsection (a)(3) allows the Secretary to suspend or revoke driving privileges upon a showing that a person has been repeatedly involved in collisions or has repeated traffic offenses indicating an inability to operate a motor vehicle safely or disrespect for traffic laws. See 625 ILCS 5/6–206(a)(3) (West 2008).

Other subsections require specific action by the Secretary, however. In particular, several subsections call for suspension of driving privileges for a certain length of time. See 625 ILCS 5/6–206(a)(15) (West 2008) ("the suspension shall be for one year" upon conviction of criminal trespass to a vehicle); 625 ILCS 5/6–206(a)(21) (West 2008) ("the suspension shall be for one year" upon conviction of leaving the scene of an accident involving vehicle damage over $1,000); 625 ILCS 5/6–206(a)(29) (West 2008) ("driving privileges shall be suspended for one year" upon conviction of certain listed offenses committed while operating a vehicle); 625 ILCS 5/6–206(a)(30) (West 2008) ("driving privileges shall be suspended for 5 years" upon second or subsequent conviction of offenses listed in paragraph 29); 625 ILCS 5/6–206(a)(32) (West 2008) ("the suspension shall be for 3 years" upon conviction of aggravated discharge of a firearm while inside a motor vehicle).

The provision involved in this case, section 6–206(a)(43), states:

> "The Secretary of State is authorized to suspend or revoke the driving privileges of any person without preliminary hearing upon a showing of the person's records or other sufficient evidence that the person:
>
> * * *
>
> [h]as received a disposition of court supervision for a violation of subsection (a), (d), or (e) of Section 6–20 of the Liquor Control Act of 1934 or a similar provision of a local ordinance, in which case the suspension shall be for

-10-

a period of 3 months[.]" 625 ILCS 5/6–206(a)(43) (West 2008).

Similar to the other subsections described above, subsection (a)(43) requires specific action when a person receives court supervision for the underage consumption of alcohol offenses involved here. The statute provides "in which case the suspension shall be for a period of 3 months." 625 ILCS 5/6–206(a)(43) (West 2008). Subsection (a)(43) provides for suspension as the only possible action as shown by the phrase "the suspension shall be." The legislature used "the suspension" rather than a less specific reference such as "any suspension." Moreover, the use of "shall be" indicates suspension is the mandatory action. See *People v. Ousley*, 235 Ill. 2d 299, 311 (2009) (when the issue is whether the statutory language has the force of a command, the word "shall" generally indicates the legislature intended to impose a mandatory obligation). The mandatory nature of the suspension is also shown by the provision of a specific period of three months. The statutory language, therefore, provides for a mandatory consequence of a three-month suspension in these circumstances.

Thus, we conclude the Secretary does not have discretion in determining whether to issue a suspension of defendants' driving privileges under section 6–206(a)(43). Rather, section 6–206(a)(43) provides for mandatory suspension. We note that our interpretation of section 6–206(a)(43) is consistent with our duty to construe statutes in a manner upholding their constitutionality when reasonably possible. See *Cook County Republican Party*, 232 Ill. 2d at 239. Given our conclusion that section 6–206(a)(43) does not allow for exercise of discretion by the Secretary, we must reject defendants' claim that the statute is arbitrary as applied and, therefore, results in a due process violation.

Finally, defendants renew their argument that suspension of their driving privileges under section 6–206(a)(43) violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11). Defendants argue that suspension of their driver's licenses, in addition to the criminal penalties imposed for underage consumption of alcohol, results in cruel and degrading punishment.

The proportionate penalties clause in the Illinois Constitution is coextensive with the federal constitution's prohibition of cruel and

unusual punishment. *Konetski*, 233 Ill. 2d at 206-07. Both provisions apply only to the criminal process involving a direct action by the government to inflict punishment. *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006). The critical determination, therefore, is whether suspension of the defendants' driving privileges is a direct action by the government to inflict punishment.

We have determined that section 6–206(a)(43)'s purpose is to promote the safe and legal operation and ownership of motor vehicles. Section 6–206(a)(43) is, therefore, intended to provide for safe highways, not to punish licensees for underage consumption of alcohol. Indeed, we have previously stated statutory summary suspension of a driver's license is not penal in nature because it is intended to protect the public rather than punish a licensee. *People v. Esposito*, 121 Ill. 2d 491, 501 (1988). Accordingly, we conclude the proportionate penalties clause does not apply here because suspension of defendants' driving privileges under section 6–206(a)(43) is not a direct action by the government to inflict punishment.

In sum, we conclude that suspension of defendants' driving privileges under section 6–206(a)(43) does not violate their constitutional rights to due process or the proportionate penalties clause. The trial court's orders declaring section 6–206(a)(43) unconstitutional must, therefore, be reversed.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court declaring section 6–206(a)(43) of the Vehicle Code unconstitutional and remand this matter to the circuit court for further proceedings consistent with this opinion.

*Circuit court judgment reversed;*
*cause remanded.*

JUSTICE KARMEIER took no part in the consideration or decision of this case.

JUSTICE GARMAN, specially concurring:

Although I agree with the lead opinion that section 6–206(a)(43) of the Vehicle Code is constitutional, I believe that *People v. Lindner*, 127 Ill. 2d 174 (1989), was wrongly decided to the extent that it requires any statutory provision that mandates or permits the revocation or suspension of a driver's license to directly serve the public interest in ensuring that "drivers who have demonstrated they are unfit to safely operate vehicles are not allowed to drive" (*Lindner*, 127 Ill. 2d at 182) by tying revocation or suspension "to offenses involving the use of a motor vehicle" (*Lindner*, 127 Ill. 2d at 181-82).

In *Lindner*, this court found the public purpose of section 6–205 of the Vehicle Code by examining "the statement of purpose in section 6–204(a)" and "the substantive provisions of section 6–205." *Lindner*, 127 Ill. 2d at 181. In my opinion, *Lindner* defined the public purpose of section 6–205 of the Vehicle Code too narrowly and failed to recognize that different public purposes might be served by different statutory provisions that mandate or permit the revocation or suspension of a driver's license, whether those provisions are contained in section 6–205, section 6–206, or elsewhere in the Vehicle Code.

Chapter 6 of the Vehicle Code is the Driver Licensing Law. Article II of chapter 6 governs the "Cancellation, Suspension, or Revocation of Licenses and Permits." This article does not contain a provision expressly stating an overarching purpose. Rather, it enumerates the circumstances in which the Secretary of State is required to cancel a driver's license (625 ILCS 5/6–201 (West 2008)), required to impose a mandatory revocation (625 ILCS 5/6–205 (West 2008)), and permitted to suspend or revoke a driver's license as a matter of discretion (625 ILCS 5/6–206 (West 2008)).

In addition, article II contains procedural provisions, including section 6–204, which is entitled "When Court to forward License and Reports." Section 6–204 directs that when a person is convicted of one of the offenses enumerated elsewhere in article II, the judge shall require the person to surrender his driver's license or permit to the clerk of the court, who shall forward the license or permit and a report of conviction to the Secretary of State. 625 ILCS 5/6–204(a)(1) (West 2008).

In *Lindner*, this court first considered "the statement of purpose in section 6–204(a)." *Lindner*, 127 Ill. 2d at 181. Yet this section does not contain language that can be identified as an express statement of the purpose of article II as a whole. Rather, section 6–204 sets out procedures "[f]or the purpose of providing to the Secretary of State the records essential to the performance of the Secretary's duties" under article II. 625 ILCS 5/6–204(a) (West 2008). This section further provides that the Vehicle Code recognizes that convictions of certain offenses or traffic violations and adjudications of delinquency are "evidence relating to unfitness to safely operate motor vehicles." 625 ILCS 5/6–204(a) (West 2008). This is the language that *Lindner* found to be a "statement of purpose." *Lindner*, 127 Ill. 2d at 181.

In my opinion, this court in *Lindner* gave entirely too much weight to this single phrase in section 6–204(a). While a conviction of a certain offense or traffic violation or an adjudication of delinquency may be evidence revealing unfitness to safely operate a motor vehicle, a conviction or adjudication having nothing to do with the individual's operation of a vehicle may also be a reasonable basis for the revocation or suspension of the individual's driver's license. Thus, one's license may be revoked or suspended for permitting "an unlawful or fraudulent use of a driver's license" (625 ILCS 5/6–206(a)(5) (West 2008)); for making a false statement or knowingly concealing a material fact in an application for a driver's license (625 ILCS 5/6–206(a)(9) (West 2008)); for possessing, displaying or attempting to fraudulently use the license of another person (625 ILCS 5/6–206(a)(10) (West 2008)); or for altering or attempting to alter a license or possessing an altered license (625 ILCS 5/6–206(a)(26) (West 2008)). None of these offenses relate to the individual's ability to safely operate a motor vehicle. In each instance, however, the legislature has determined that the individual who commits such an offense may forfeit his right to drive, at least temporarily.

Section 6–204's mention of "unfitness to safely operate motor vehicles," therefore, cannot be viewed as the legislature's expression of a single overarching purpose for all of the provisions of article II, chapter 6, of the Vehicle Code. It is entirely possible that sections 6–201, 6–205, and 6–206 are intended to serve different purposes, or that some of the 43 subsections of section 6–206 are intended to serve

different or multiple purposes. *Lindner* should be overruled to the extent that it so narrowly defines the public purpose of this article and, thereby, limits consideration of other public purposes that may be served by a challenged provision.

In addition to relying on section 6–204, *Lindner* inferred the public purpose of section 6–205 as a whole from the fact that with the exception of the challenged section, "every subsection of sections 6–205(a) and (b) has some affinity with a motor vehicle–either the operation or ownership of the vehicle, or the paperwork connected to such operation or ownership." *Lindner*, 127 Ill. 2d at 181. Thus, even while acknowledging that section 6–205(b)(2) provided for revocation of a driver's license "regardless of whether a vehicle was used in their commission" of the crime, the court nevertheless concluded that "section 6–205(a)(3) clearly reflects the legislature's intent that revocation be tied to offenses involving the use of a motor vehicle." *Lindner*, 127 Ill. 2d at 181-82. That is, this court determined that when two sections of the same statute reflected different legislative intents, one section was a true expression of purpose and the other section was not a true expression of purpose.

As the dissenting justice pointed out, this conclusion defies logic. *Lindner*, 127 Ill. 2d at 190-91 (Miller, J., dissenting) (the presence in section 6–205 of subsection (b)(2), which requires revocation for offenses not related to the operation of a motor vehicle, demonstrates that "the statutory scheme must actually serve at least one additional purpose not specified in the general statement of intent" that the majority found in section 6–204). Thus, by including a provision within section 6–205 that required license revocation on some basis other than an offense involving the use of a motor vehicle, the legislature clearly had another purpose in mind.

In my opinion, the *Lindner* court's "unnecessarily crimped view of the purpose of the legislation and the interests served by it" (*Lindner*, 127 Ill. 2d at 188 (Miller, J., dissenting)) led directly and inevitably to its finding the challenged provision unconstitutional. Had the legislative purpose been viewed more broadly, as the plain language of the statute required, the court could then have determined whether that purpose was a legitimate legislative purpose and whether the challenged provision was rationally related to that purpose.

-15-

Instead, that analysis was short circuited by the court's answer to the threshold question.

I have no opinion on whether the *Lindner* court reached the correct result in that case. It is possible that section 6–205(b)(2) may have been found unconstitutional even if the legislative purpose had been properly defined. This court might have found that the legislative purpose was not legitimate or that the provision was not rationally related to that purpose.

In keeping with the doctrine of *stare decisis*, this court does not overrule a prior decision absent good cause or a compelling reason. *Tuite v. Corbitt*, 224 Ill. 2d 490, 505 (2006). We do not depart from established precedent, such as our decision in *Lindner*, merely because we might have decided otherwise if we were writing on a blank slate. However, good cause to depart from *stare decisis* exists when "serious detriment prejudicial to public interests is likely to result" and when a governing decision is "unworkable or [is] badly reasoned." *Tuite*, 224 Ill. 2d at 505-06.

This court is now faced with the precise situation envisioned by the dissenting justice in that case. By continuing to adhere to *Lindner*'s "unnecessarily crimped view" of the purpose of section 6–205, we find ourselves constrained in our consideration of the constitutionality of a provision in section 6–206. We must either acknowledge that *Lindner* was badly reasoned on this point, producing a result that is detrimental to the public interest, or affirm the trial court, which found section 6–206(a)(43) unconstitutional.

Rather than expressly overruling *Lindner*, the lead opinion applies its rule in such a way as to render it almost meaningless.

*Lindner* contains four statements in which this court identified the purpose of the statute. First,

> "We think section 6–205(a)(3) clearly reflects the legislature's intent that revocation be tied to offenses involving the use of a motor vehicle." *Lindner*, 127 Ill. 2d at 181-82.

Second,

> "The stated purpose is to ensure that drivers who have demonstrated they are unfit to safely operate vehicles are not allowed to drive." *Lindner*, 127 Ill. 2d at 182.

Third,

> "[W]e conclude that the public interest the statute was intended to protect is the interest in keeping the roads free of two kinds of drivers: those who threaten the safety of others, and those who have abused the privilege to drive by doing so illegally *** ." *Lindner*, 127 Ill. 2d at 182.

And fourth,

> "In short, the public interest is the safe and legal operation of motor vehicles." *Lindner*, 127 Ill. 2d at 182.

The lead opinion finds that section 206(a)(43) "unquestionably furthers the public interest in the safe and legal operation and ownership of motor vehicles" (slip op. at 5), but does not acknowledge that the offense of possession of alcohol by a person under the age of 21 (235 ILCS 6/6–20 (West 2008)) is not tied to an offense involving the use of a vehicle, or that individuals who commit this offense have not demonstrated that they are unfit to safely operate a vehicle, or that such persons have not threatened the safety of others or abused the privilege of driving by doing so illegally. In effect, the lead opinion chooses the broadest and most expansive statement of purpose from *Lindner*, while ignoring the substance of *Lindner*. The trial court, however, properly applied *Lindner* and found that the very narrow purpose expressed in the first three of the four passages quoted above was not met.

The lead opinion then finds this broader public purpose served based on the legislature's possible belief "that a young person who has a driver's license and consumes alcohol illegally may take the additional step of driving after consuming alcohol. It is reasonable to believe a young person disobeying the law against underage consumption of alcohol may also lack the judgment to decline to drive after drinking." Slip op. at 5.

This conclusion may reflect the lead opinion's effort to resolve all doubts in favor of finding the provision constitutional and to give effect to the strong presumption of constitutionality. *In re Marriage of Miller*, 227 Ill. 2d 185, 195 (2007). However, by reaching so far to find a rational relationship between the now more broadly defined legislative purpose and the challenged statute, the lead opinion has saved *Lindner* by rendering it meaningless. In essence, the lead

opinion concludes that because an individual may commit one crime, he may lack the judgment to decline to commit another crime. Under this reasoning, the legislature could provide that a conviction of domestic battery is grounds for the suspension of the offender's driver's license because his anger issues make him likely to succumb to road rage; or that a person who has been found liable in a civil action for negligence causing the death or injury of another person, even if no motor vehicle was involved, should have his license suspended or revoked because he has demonstrated that he cannot be counted upon to exercise ordinary care. Indeed, the statute at issue in *Lindner* would likely survive this analysis because an individual who would commit acts of sexual assault against his minor stepdaughters cannot be trusted to resist the temptation to lure a child into his car.

In addition, if this court were to overrule *Lindner* to the extent I suggest, it could also correct an imprecise statement in that case. In defining the rational basis test, this court stated that the legislative enactment must bear a " ' "reasonable relationship to *the* public interest intended to be protected." ' " (Emphasis added.) *Lindner*, 127 Ill. 2d at 180, quoting *People v. Wick*, 107 Ill. 2d 62, 65-66 (1985), quoting *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 453 (1979). Immediately thereafter, this court cited *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 368 (1986), for the proposition that a "statute will be upheld if it bears a rational relation to *a* legitimate legislative purpose and is neither arbitrary nor discriminatory." (Emphasis added.)

The *Lindner* court improperly shifted its focus from discerning whether there might have been *a* legitimate legislative purpose for the challenged provision to the question of whether the provision served *the* public interest the statute as a whole was intended to protect and then set about finding that purpose. The difference is subtle, but significant. In *People v. Cornelius*, 213 Ill. 2d 178, 203-04 (2004), we stated that the "rational basis test is satisfied where the challenged statute bears a rational relationship to the purpose the legislature intended to achieve in enacting the statute." Thus, if the legislature has identified a purpose for its enactment of a statute, and if that purpose is legitimate, the rational basis test is satisfied if the statute bears a rational relationship to that purpose.

-18-

However a challenged statute will still satisfy the rational basis test if it bears *a* reasonable relationship to a legitimate legislative purpose. Thus, we said in *People v. Johnson*, 225 Ill. 2d 573, 584 (2007), that "[u]nder the rational basis test, our inquiry is twofold: we must determine whether there is a legitimate state interest behind the legislation, and if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it." Further, "[t]he rational basis test is highly deferential; its focus is not on the wisdom of the statute. [Citation.] If there is any conceivable set of facts to show a rational basis for the statute, it will be upheld." *Johnson*, 225 Ill. 2d at 585. See also *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008) ("a legitimate legislative purpose"); *Davis v. Brown*, 221 Ill. 2d 435, 450 (2006) ("a legitimate state interest"); *In re D.W.*, 214 Ill. 2d 289, 310 (2005) ("a legitimate state interest"); *People v. Wright*, 194 Ill. 2d 1, 24 (2000) ("a public interest to be served"); *People v. Adams*, 144 Ill. 2d 381, 390 (1991) ("a public interest to be served"). Taking a broader view of the legislative purpose portion of the inquiry is consistent with due process decisions of the United States Supreme Court.

Defendants' constitutional challenge to section 6–206(a)(43) invoked the due process clauses of both the United States and the Illinois Constitutions. The lead opinion does not distinguish between the two, treating the due process protections of the state and federal constitutions as coextensive. This is consistent with our past practice when the language of the two constitutions is identical or nearly identical. *People v. Caballes*, 221 Ill. 2d 282, 335 (2006). Thus, in *Miller*, we discerned "no reason to construe our due process clause differently than the federal due process clause on the specific issue before us," and therefore treated the two clauses and coextensive and were guided by federal precedent. *Miller*, 227 Ill. 2d at 196.

Under federal precedent, a court will not strike down a statute under the rational basis test even if the reasonable relationship between the statute and a legitimate legislative purpose is hypothetical. It is entirely appropriate for the court to consider what purpose the legislature might have intended to serve or what the legislature "might have concluded" (*Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 487, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464 (1955)) about the relationship between its intent and the method

chosen to effectuate it. "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson*, 358 U.S. at 487-88, 99 L. Ed. at 572, 75 S. Ct. at 464. A court will not strike down a law on due process grounds merely because the law may be "unwise, improvident, or out of harmony with a particular school of thought." *Williamson*, 358 U.S. at 488, 99 L. Ed at 572, 75 S. Ct. at 464. In such instances, if the people seek change in the law, they " 'must resort to the polls, not to the courts.' " *Williamson*, 358 U.S. at 48, 99 L. Ed. at 572, 75 S. Ct. at 464-65, quoting *Munn v. Illinois*, 94 U.S. 113, 134, 24 L. Ed. 77, 87 (1876).

I note that section 6–206(a)(43) was enacted in 2007 and took effect on January 2, 2008, decades after the enactment of the provision that is now codified at section 2–206. Later additions to section 2–206 do not necessarily share the same legislative purpose as earlier enactments or, if they share the same general purpose, they may be intended to serve an additional purpose as well. See *Lindner*, 127 Ill. 2d at 190 (Miller, J., dissenting). The decision to codify this provision in section 6–206(a) may be a result of the organizational scheme of chapter 6 rather than an expression of identical purpose. With this in mind, and guided by the principles set out by the Supreme Court in *Williamson*, I would look beyond sections 6–204 and 6–205 of the Vehicle Code to discern the evil that the legislature might have intended to address by enacting section 6–206(a)(43).

In 2002, the General Assembly enacted Public Act 92–804, which amended section 4–4 of the Liquor Control Act and added subsection (a)(38) to section 6–206 of the Vehicle Code. The effect of these amendments was to provide discretionary authority to the Secretary of State for the suspension or revocation of the driver's license of a person "*convicted* of a violation of Section 6–20 of the Liquor Control Act of 1934 or a similar provision of a local ordinance." (Emphasis added.) 625 ILCS 5/6–206(a)(38) (West 2008). Section 6–20 defines the offenses of illegal transfer, possession and consumption of alcoholic liquor by an underage person. 235 ILCS 5/6–20 (West 2008).

In 2007, the General Assembly enacted Public Act 95–66, entitled "AN ACT concerning transportation." Pub. Act 95–166, eff. January

1, 2008. Again, the Act amended the Liquor Control Act and the Vehicle Code. The effect of these amendments was to provide discretionary authority to the Secretary of State for the suspension or revocation of the driver's license of a person who received a disposition of *court supervision* for a violation of section 6–20. 625 ILCS 5/6–206(a)(43) (West 2008).

During the third reading of the bill in the House of Representatives, its chief sponsor, Representative Tom Cross, spoke:

> "This is a Bill that deals with drinking by teenagers, specifically minors. As we all know, the law says if you're under 21, you cannot drink in the State of Illinois. This Bill provides that in the event of a court supervision, which I think is a good concept *** that you would lose your driver's license for a period of three (3) months. That has not been the case when someone receives court supervision. We had a rather tragic incident in Oswego, a couple of months ago, where five (5) young children lost their lives. Alcohol was involved. This is an attempt to address that issue and it has unfortunately been a problem around the state." 95th Ill. Gen. Assem., House Proceedings, April 27, 2007, at 22 (statements of Representative Cross).

Representative Cross did not specifically state that the driver who caused this accident was a teenager who was then under court supervision for a violation of section 6–20 of the Liquor Control Act, although this fact seems to be implied by his remarks.

Nevertheless, we are not constrained by the language of the statute or by the legislative history (of which there is very little) when discerning what "evil" the legislature might have been addressing. We may ask ourselves, in light of the overall legislative scheme and common sense, what the legislative purpose might have been for the enactment.

One purpose of adding subsections (a)(38) and (a)(43) to section 6–206 may have been to encourage compliance with section 6–20 of Liquor Control Act, which is specifically referenced in the both provisions. The purpose of the Liquor Control Act is that "the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall

be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." 235 ILCS 5/1–2 (West 2008).

Sections 6–206(a)(38) and (a)(43) may be intended to effectuate this legitimate legislative purpose by giving persons under the age of 21 an incentive to resist the peer pressure to drink by conditioning their continued ability to drive on compliance with section 6–20 of the Liquor Code.

In the absence of an express statement of the intent of our own legislature, we can also look to similar enactments in other states, for our own legislators may have had a similar purpose. The California legislature made specific findings when it enacted a statute that suspended the driving privileges of persons under the age of 21 who committed offenses involving controlled substances.

"(a) The Legislature finds and declares as follows:

* * *

'(3) Individuals who abuse drugs or alcohol demonstrate a dangerous disregard for the safe legal operation of motor vehicles. The risk is particularly acute for individuals under the age of 21.

'(4) The increased potential for teenage death in vehicle collisions and other nondriving accidents, homicides, and suicides, while being under the influence of drugs or alcohol, requires special attention in order to reduce the statewide youth fatality rate and to control unlawful and unsafe driving practices.

'(b) It is, therefore, the intent of the Legislature to enact this measure in an attempt to reduce the incidence of young drivers on the highways and roads of this state who, because of their use of alcohol or other illegal drugs, pose a danger to the health and safety of other drivers by all or a combination of the following methods:

'(1) To prevent use of motor vehicles by drivers under the age of 21 years by suspending their driving privileges for one year from the date of conviction, because a one year suspension of these drivers' privileges may provide a means of deterring use of alcohol, and other illegal drugs by these young persons." *People v. Valenzuela*, 3 Cal. App. 4th Supp. 6, 9-10, 5 Cal. Rptr. 2d 492, 493 (1991), quoting Stats. 1988, ch. 1254, §1, at 4175-76.

These legislative findings are entirely consistent with the concerns expressed by the sponsor of the bill that resulted in the enactment of section 6–206(a)(43). I would find that the legitimate legislative purposes of the enactment were to encourage compliance with section 6–20 of the Liquor Control Act and to protect the individual young person and the public by suspending the driving privileges of those young persons who, by violating section 6–20, have demonstrated that they should not be entrusted with the operation of a motor vehicle.

If the means chosen–suspension of the driver's license–bears a reasonable relationship to this purpose, the statute may not be struck down. *Johnson*, 225 Ill. 2d at 585. The lead opinion acknowledges that the statute "must be upheld if there is a conceivable basis for finding it is rationally related to a legitimate state interest" and that the legislature's judgment is "not subject to judicial fact finding and 'may be based on rational speculation unsupported by evidence or empirical data.' " Slip op. at 4, quoting *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003).

It is entirely rational for the legislature to conclude that the possible suspension of one's driver's license may serve as an incentive to comply with a law or court order. For example, section 6–201(a)(3) of the Vehicle Code provides that the Secretary of State may cancel a license or permit for failure to pay fees or civil penalties owed to the Illinois Commerce Commission. 625 ILCS 5/6–201(a)(3) (West 2008). Section 6–201(a)(9) provides that the Secretary may cancel the license of any person who "has been convicted of a sex offense as defined in the Sex Offender Registration Act," and that the license shall remain cancelled until the person registers as required and has otherwise complied with the requirements of the Registration Act. 625 ILCS 5/6–201(a)(9) (West 2008). Section 6–103(14) provides that the Secretary "shall not issue, renew, or allow the retention of any driver's license nor issue any permit under this Code *** [t]o any person who is 90 days or more delinquent in court ordered child support payments or has been adjudicated in arrears in an amount equal to 90 days' obligation or more and who has been found in contempt of court for failure to pay the support." 625 ILCS 5/6–103(14) (West 2008).

Under the reasoning of *Lindner*, these provisions would be unconstitutional because they do not relate directly to the narrowly

-23-

defined public interest in ensuring that "drivers who have demonstrated they are unfit to safely operate vehicles are not allowed to drive." *Lindner*, 127 Ill. 2d at 182. However, it is clear that the legislature, on occasion, uses the provisions of the Vehicle Code to advance broader public purposes.

I would find that section 6–206(a)(43) bears a rational relationship to the legitimate public purposes of encouraging compliance with section 6–20 of the Liquor Control Act and of protecting young drivers and the public from the potentially fatal consequences that may follow when a young person whose judgment is impaired by alcohol gets behind the wheel of a car.


JUSTICE THOMAS joins in this special concurrence.


JUSTICE FREEMAN, dissenting:

I dissent from today's resolution of this case because, under the principles set forth in *People v. Lindner*, 127 Ill. 2d 174 (1989), the circuit court correctly ruled section 6–206(a)(43) of the Vehicle Code to be unconstitutional.

Justice Garman's assessment of Justice Kilbride's opinion is well-taken, and I agree with her that his analysis renders *Lindner* meaningless. Slip op. at 16-18 (Garman, J., specially concurring, joined by Thomas, J.). Justice Garman also accurately identifies our options in this case: either we overrule *Lindner*'s view of the purpose of section 6–205 or we apply the case and affirm the trial court's ruling. Slip op. at 16 (Garman, J., specially concurring, joined by Thomas, J.).

Rather than ask that *Lindner* be overruled, the State believes it can be distinguished from this case. *Lindner* cannot be distinguished in any meaningful way, Justice Kilbride's suggestion notwithstanding, as Justice Garman correctly recognizes. I might also note that in the 21 years since *Lindner* was announced, there has been no indication from this court that *Lindner* was either wrongly decided or too narrowly defined the purpose of section 6–205.

*Stare decisis* means, of course, that prior decisions, *Lindner* included, should be overturned only on a showing of good cause. *People v. Colon*, 225 Ill. 2d 125, 146 (2007). Because no one is

asking for *Lindner* to be overruled, the court does not have the benefit of any developed argument as to good cause. I therefore express no opinion on whether *Lindner* should be overruled.

JUSTICE BURKE joins in this dissent.