NOTICE

Decision filed 05/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240625

NO. 5-24-0625

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1239 |
| | ) | |
| DAKOTA M. SPEARS, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justices Hackett* and Clarke** concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a jury trial in the circuit court of Champaign County, defendant, Dakota M. Spears, was convicted of unlawful possession of a weapon by a felon (UPWF), a Class X felony (720 ILCS 5/24-1.1(a), (e) (West 2022)), and sentenced to 14 years in prison. Defendant appeals, arguing that (1) subsection (e) of section 24-1.1 of the Criminal Code of 2012 (Code) (*id.* § 24-1.1(e)), which makes the simultaneous possession of a firearm or firearm ammunition and body armor by a felon a Class X felony, with an enhanced sentencing range of 10 to 40 years in prison, violates the due process clauses of the United States Constitution (U.S. Const., amend. XIV) and

---

*Justice Welch was originally assigned to the panel, prior to his death. Justice Hackett was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

**Justice Moore was originally assigned to the panel, prior to his retirement. Justice Clarke was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

the Illinois Constitution (Ill. Const. 1970, art. I, § 2); (2) subsection (e) of section 24-1.1 of the Code violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII); (3) his 14-year sentence was excessive; and (4) subsections (a) and (e) of section 24-1.1 of the Code violate his individual right to bear arms under the United States Constitution (U.S. Const., amend. II) and the Illinois Constitution (Ill. Const. 1970, art. I, § 22). For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On October 5, 2023, the State charged defendant by information with two counts of UPWF, one Class 3 felony (count I) (720 ILCS 5/24-1.1(a), (e) (West 2022)) and one Class X felony (count II) (*id.*). In count I, the State alleged that defendant, a person previously convicted of felony theft, knowingly possessed firearm ammunition, specifically, 30 rounds of .22-caliber ammunition. In count II, the State alleged that defendant, a person previously convicted of felony theft, knowingly possessed the same firearm ammunition while also possessing body armor.

¶ 4      On February 13, 2024, defendant's two-day jury trial commenced. As a preliminary matter, the parties stipulated that defendant had a prior felony theft conviction.

¶ 5      Cory Christensen, a detective with the Champaign County Sheriff's Office, testified for the State. Detective Christensen was part of an investigation involving defendant that resulted in the execution of a search warrant at a detached garage in Ludlow, Illinois, on October 4, 2023.[1] Law enforcement found defendant on a couch in the detached garage when they arrived to execute the search warrant. During the search, law enforcement found a box of loose ammunition and a

[1]The search warrant was executed in relation to a separate alleged offense. Prior to trial, the trial court granted, in part, defendant's motion *in limine* to exclude certain evidence relating to the separate offense. However, evidence pertaining to the separate offense was subsequently presented at defendant's sentencing hearing, as discussed *infra*.

bulletproof, or Kevlar, vest. The ammunition was found in a small, white cardboard box inside of a drawer or on a shelf in the garage. According to Detective Christensen, the box contained approximately 30 live rounds of .22-caliber ammunition. The bulletproof vest was found on the couch where defendant had been sitting.

¶ 6 Detective Christensen interviewed defendant during the search. During the interview, defendant stated that he had been residing in the detached garage for approximately one month. Defendant admitted that he was a felon. Defendant further admitted that the "shells" and bulletproof vest found during the search were his property. Defendant advised Detective Christensen that he had received the ammunition from a friend "four to five years ago" and that he had received the vest from his uncle. Defendant further advised that he occasionally wore the vest.

¶ 7 Detective Christensen testified that he wore a body camera during the search and interview of defendant. The body camera footage was admitted as an exhibit and shown to the jurors.[2] The body camera footage showed Detective Christensen initiate his questioning of defendant by showing defendant a Snapchat video. After viewing the Snapchat video, defendant stated, "That is me in a Kevlar vest with a BB gun." Defendant advised Detective Christensen that he had gotten rid of the BB gun a week earlier. When Detective Christensen asked defendant why he had disposed of the BB gun, defendant responded, "I wear my Kevlar a lot, and I'm a felon." Defendant explained that he did not want to get into trouble for possessing a BB gun. Defendant further explained that he wore the bulletproof vest because he had been shot at when he lived in Danville, Illinois.

___

[2]The body camera footage had been altered to comply with the trial court's rulings on defendant's motions *in limine*.

3

¶ 8    On cross-examination of Detective Christensen, the defense admitted into evidence several photographs taken of the detached garage during the search. The photographs depicted cluttered and disorganized shelving on the walls of the garage. The floor area of the garage was similarly disorganized and cluttered with numerous items, including motorcycles, motorcycle parts, storage containers, and a full trash bag. The defense did not present any witnesses, and defendant elected not to testify.

¶ 9    Following deliberations, the jury found defendant guilty of UPWF. The jury also found that the State proved the allegation that defendant was wearing or in possession of body armor.

¶ 10    On April 4, 2024, the trial court held a sentencing hearing. The court initially noted at the hearing that defendant was convicted of "one count of unlawful possession of weapons with the enhancement of body armor" and that the sentencing range was 10 to 40 years in prison.

¶ 11    Detective Christensen again testified for the State. Detective Christensen investigated a shooting that occurred in Ludlow at approximately 2:45 a.m. on September 30, 2023. In the course of the investigation, law enforcement spoke with Michael Walker, who observed "a male subject attempting to get into a vehicle" near Walker's residence. Walker chased the male subject and "heard two shots being discharged from presumably a firearm as he was chasing after the subject." Law enforcement discovered two spent .38-caliber shell casings in the vicinity where Walker claimed he heard the two shots. Law enforcement also obtained several video recordings from the area that depicted "a tall, skinny, presumably a male running across one of the main streets in Ludlow shortly after the shots were heard on the video." Another video depicted the same subject either "attempting to get into cars or getting into cars." Detective Christensen also interviewed a high school student who was in his backyard near Walker's residence when the shots were fired. The student took cover in his backyard after hearing the gunshots and observed "a tall, skinny

white male running northbound by his backyard of his residence." Detective Christensen learned that defendant may have been the male subject involved in the attempted break-ins and shooting, which led to the execution of the search warrant at the detached garage on October 4, 2023.

¶ 12    Detective Christensen spoke with Kourtney Moore, who resided at the home with the detached garage. Moore advised that she and Joseph Rowcliff, who also resided at the home, had allowed defendant to stay in the detached garage but had recently directed defendant to leave. Moore claimed that defendant refused to leave. Moore believed defendant used methamphetamine and saw defendant with an individual who was known to supply drugs. Moore viewed a video recording of the male attempting to break into vehicles, and Moore believed the individual in the video had the same height and build as defendant. Moore also advised that defendant had worn similar shoes to the shoes worn by the individual in the video.

¶ 13    Detective Christensen also spoke with Rowcliff, who advised that defendant had previously battered Rowcliff. Rowcliff also suspected that defendant used drugs and had a stolen motorcycle in the detached garage. Detective Christensen explained that, during the search of the detached garage, law enforcement discovered parts of a motorcycle that was reported stolen.

¶ 14    Detective Christensen also spoke with Anthony Hensley, defendant's cell mate in jail. Detective Christensen testified that Hensley stated that defendant admitted "that he [was] the one that did the shooting in Ludlow." Hensley initially stated that defendant used a 9mm firearm but later claimed defendant used a .38-caliber handgun. Hensley also learned from defendant that defendant had sold the firearm to someone after the shooting.

¶ 15    Detective Christensen testified that law enforcement never recovered a firearm during their investigation of defendant. When Detective Christensen questioned defendant about the Snapchat

5

video of defendant holding a gun, defendant claimed he had a "BB or pellet gun, airsoft gun, not an actual firearm." Defendant claimed he disposed of the gun.

¶ 16　The presentence investigation (PSI) report indicated that defendant moved frequently as a child because his father was in the Marines. Defendant reported that he was an "early enlistment" into the Marines at the age of 17, but that he was arrested before he was "shipped off to Boot Camp." Defendant never attempted to enlist in the Marines following his arrest. Defendant reportedly suffered from an anoxic brain injury at birth. Defendant had been diagnosed with oppositional defiant disorder and attention deficit hyperactivity disorder as a child. As an adult, defendant had been diagnosed with Asperger syndrome, obsessive-compulsive disorder, depression, and anxiety. Defendant claimed that a family friend had physically and sexually assaulted him when he was a child while his father was deployed. Defendant admitted that he used methamphetamine but claimed he had stayed sober while in jail. Defendant desired to participate in therapy and substance abuse treatment.

¶ 17　The PSI report further indicated that defendant had no juvenile record, but his adult record included a 2014 misdemeanor theft conviction, a 2015 Class 3 felony theft conviction, and various traffic violations between 2015 and 2022. Defendant also had charges for unlawful use of a blackjack knife in 2019 and was convicted of felony theft in May 2023. The PSI further indicated that defendant had been charged with "Aggravated Discharge of a Firearm (Class 1 Felony)" and "Unlawful Possession of Weapons by Felons (Class 3 Felony)" in Champaign County case No. 24-CF-184, which remained pending at the time the PSI was prepared.

¶ 18　Defendant made a statement in allocution at sentencing. Defendant acknowledged that he needed assistance in certain areas of his life and that he had "strayed" a few times. Defendant expressed concern that a 20-year sentence would sever his support network. Defendant possessed

6

mechanical and carpentry skills. He desired to pursue additional education. Defendant believed his six months of sobriety in jail had given him a clearer understanding of his addiction. Defendant believed he had made a "complete 360" turnaround. The defense also introduced letters from defendant's mother, high school special education teacher, and local minister, all of which were admitted into evidence at the hearing.

¶ 19    Prior to announcing a sentence, the trial court stated that it considered the PSI report, the evidence presented, defendant's statement in allocution, the arguments of counsel, and all statutory and non-statutory factors in aggravation and mitigation. The court found it "relevant that the Defendant may have been involved in what sounds like attempted break-ins to cars and then fired a gun either at or in the direction of or in the air to warn off somebody trying to scare him away from—from that behavior." The court noted that defendant admitted to wearing body armor and that defendant claimed he wore the body armor "because he had been shot at." The court noted, however, that "we're here on the possession of firearm ammunition while in possession of body armor." The court stated, "So, I don't believe that simple possession certainly didn't cause, may have threatened serious harm for the reasons [the State] points out," being "[t]hat you don't have body armor if you're not involved in things where you think you need it." The court later clarified that the fact that defendant did not contemplate that his conduct would cause or threaten serious harm was a mitigating factor.

¶ 20    The trial court also considered defendant's history of prior delinquency, which included six traffic offenses, four misdemeanors, and two felony theft offenses. The court found it an aggravating factor "that the one [felony theft offense] he committed in 2023, he was placed on probation, and was still on that probation at the time of the commission of this offense." The court found "[t]he fact that those are both property offenses would mitigate against a lengthy prison

7

sentence." The court found it a mitigating factor that defendant had a difficult childhood and that he was able to graduate high school despite his difficult childhood. The court also noted that he obtained an automotive mechanic certification and had aspirations to return to college. The court noted that defendant had been diagnosed with oppositional defiant disorder, which was "suggestive of someone that's not willing to follow instruction or—or obey authority." The court found defendant's substance abuse and mental health issues "a double-edged sword" because those issues could be viewed as a basis for sympathy but could also be viewed as something that demonstrated defendant would continue to engage in criminal behavior.

¶ 21 The trial court noted that, although defendant had two prior non-violent felonies, this was "the first one even remotely capable of being considered as a crime of violence." The court noted, however, that the facts of the current case did "not suggest a crime of violence." The court then stated, "The presence and ever-present nature, according to the Defendant's own words, of the body armor would suggest a strong probability or propensity for—for violence." The court then indicated that it gave "some weight" to evidence of "the other shooting," but "not nearly as much as the rest of the information" the court had recited. The court, balancing "all of those things together," ultimately sentenced defendant to 14 years in prison to "be served with the eligibility for day-for-day good time credit."

¶ 22 On April 9, 2024, defendant filed a motion to reconsider his sentence, which the trial court denied. Defendant filed a timely appeal.

¶ 23                                    II. ANALYSIS

¶ 24 On appeal, defendant argues that (1) subsection (e) of section 24-1.1 of the Code, which makes the simultaneous possession of a firearm or firearm ammunition and body armor by a felon a Class X felony with an enhanced sentencing range of 10 to 40 years in prison, violates the due

process clauses of the United States Constitution and the Illinois Constitution; (2) subsection (e) of section 24-1.1 of the Code violates the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution; (3) his 14-year sentence was excessive; and (4) subsections (a) and (e) of section 24-1.1 of the Code violate his individual right to bear arms under the United States Constitution and the Illinois Constitution. We first address defendant's constitutional claims.

¶ 25                                 A. Constitutional Claims

¶ 26     We initially note that "statutes are presumed constitutional, and we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so." *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 25 (citing *People v. Inghram*, 118 Ill. 2d 140, 146 (1987)). "The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation." *Id.* (citing *In re R.C.*, 195 Ill. 2d 291, 296 (2001)). "Whether a statute is unconstitutional is a question of law, which is reviewed *de novo*." *People v. Davis*, 2014 IL 115595, ¶ 26.

¶ 27     "A constitutional challenge to a statute may be either facial or as applied." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 11, *pet. for leave to appeal pending*, No. 130804 (filed May 20, 2024) (citing *People v. Rizzo*, 2016 IL 118599, ¶ 24). "A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, while an as-applied challenge depends on the particular facts and circumstances of the party." *Id.* (citing *Rizzo*, 2016 IL 118599, ¶ 24). "Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006) (citing *In re*

*Parentage of John M.*, 212 Ill. 2d 253, 269 (2004)). " '[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.' " *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)).

¶ 28 Defendant, here, challenges the constitutionality of section 24-1.1, which provides, in pertinent part, as follows:

"(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any *** firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. ***

* * *

(e) Sentence. *** A violation of this Section while wearing or in possession of body armor as defined in Section 33F-1 is a Class X felony punishable by a term of imprisonment of not less than 10 years and not more than 40 years." 720 ILCS 5/24-1.1(a), (e) (West 2022).

With this in mind, we consider defendant's specific constitutional arguments.

¶ 29                                1. Due Process Claim

¶ 30 Defendant argues that subsection (e) of section 24-1.1 of the Code facially violates the due process clauses of the United States Constitution and the Illinois Constitution. We disagree.

¶ 31 Both the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) provide that no person shall be deprived of life, liberty, or property without due process of law. "There are two aspects to the guarantee of due process, procedural and substantive." *People v. Villareal*, 2023 IL 127318, ¶ 20 (citing *People v. Pepitone*, 2018 IL 122034, ¶ 13).

"[A] procedural due process claim asserts that the deprivation at issue is constitutionally invalid because the process leading up to it was deficient, whereas a substantive due process claim asserts that the deprivation at issue is constitutionality invalid in and of itself, irrespective of the process leading up to it." *People v. Cardona*, 2013 IL 114076, ¶ 17.

"A statute violates the constitutional guarantee of due process if it does not bear a rational relationship to a legitimate legislative purpose." *Villareal*, 2023 IL 127318, ¶ 20 (citing *People v. Boeckmann*, 238 Ill. 2d 1, 7 (2010)). "A statute can also violate due process if it is unconstitutionally vague." *Id.* (citing *People v. Plank*, 2018 IL 122202, ¶ 12).

¶ 32    The parties, here, appear to agree that section 24-1.1(e) does not affect a fundamental constitutional right. "When a statute does not impact a fundamental constitutional right, the applicable standard for reviewing whether the statute conforms with substantive due process is the rational basis test." *Id.* ¶ 22 (citing *Boeckmann*, 238 Ill. 2d at 7). "Applying the rational basis test, we must determine (1) whether there is a legitimate state interest behind the statute and, if so, (2) whether there is a reasonable relationship between the interest and the means the legislature has chosen to pursue it." *Id.* (citing *Pepitone*, 2018 IL 122034, ¶ 14). "If a statute is reasonably related to a legitimate state interest, the means or method the legislature has chosen to serve the state interest will also be reasonable." *Id.* (citing *Pepitone*, 2018 IL 122034, ¶ 16). "A challenged statute must be upheld if there is a conceivable basis for finding it is rationally related to a legitimate state interest." *Id.* (citing *Boeckmann*, 238 Ill. 2d at 7). "Although it is not toothless, the rational basis test is highly deferential to the findings of the legislature." *Id.* (citing *Pepitone*, 2018 IL 122034, ¶ 17; *People v. Jones*, 223 Ill. 2d 569, 596 (2006)). "The legislature's judgments in drafting a statute are not subject to judicial fact finding and 'may be based on rational speculation

11

unsupported by evidence or empirical data.' " *Boeckmann*, 238 Ill. 2d at 7 (quoting *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003)).

¶ 33    As noted, the UPWF statute provides, in relevant part, as follows:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any *** firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

Also, relevant here, the UPWF statute provides that "[a] violation of this Section while wearing or in possession of body armor as defined in Section 33F-1 is a Class X felony punishable by a term of imprisonment of not less than 10 years and not more than 40 years." *Id.* § 24-1.1(e).

¶ 34    Based on our review of section 24-1.1(a), we find the plain language indicates that the legislative purpose of the statute is to deter felons from possessing firearms and firearm ammunition. See *People v. Kelly*, 347 Ill. App. 3d 163, 167 (2004) ("The plain language of section 24-1.1 reveals that the legislature's intent was to keep dangerous weapons, including but not limited to firearms, out of the hands of convicted felons in any situation whether it be in the privacy of their own home or in a public place." (Emphasis omitted.)). As our colleagues in the First District noted, "[t]he purpose of the U[P]WF statute 'is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon.' " *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 14 (quoting *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986) (citing *Rawlings v. Department of Law Enforcement*, 73 Ill. App. 3d 267 (1979))). The plain language of subsection (e) of section 24-1.1 further indicates that the legislature sought to punish more harshly felons who possess firearms or firearm ammunition while also wearing or

12

possessing body armor. In our view, the legislature has a legitimate interest in protecting the public and law enforcement by deterring convicted felons from possessing firearms or firearm ammunition while also wearing or possessing body armor. We also conclude that the legislature's decision to increase the penalty for felons possessing firearms or firearm ammunition while also wearing or possessing body armor was reasonable and rationally related to the purpose of protecting the health and safety of the public and law enforcement. Accordingly, we conclude that section 24-1.1 does not violate due process.

¶ 35    We acknowledge defendant's argument that the legislature intended for subsection (e) of section 24-1.1 to apply only to "violent offenders committing violent crimes." In support, defendant points to the legislative history of section 24-1.1(e). We agree with the State, however, that defendant's reliance on the legislative history is improper where the language of the statute is plain and unambiguous. See *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24 ("Where statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction."). The legislature could have easily included a provision limiting the applicability of subsection (e) of section 24-1.1 to violent felony offenders; however, the legislature chose not to do so. Thus, we agree with the State that defendant's argument is unpersuasive and contrary to the unambiguous language of the statute.

¶ 36    Defendant turns his argument to overbreadth, asserting that section 24-1.1(e) lacks a culpable mental state and, thus, punishes innocent conduct unrelated to the purpose of the statute. Defendant claims there are a myriad of situations in which a person could possess body armor and a firearm or firearm ammunition for innocent reasons. Specifically, defendant notes that the statute would prohibit the following "innocent" conduct: a security guard wearing a bulletproof vest for his job who disarms a suspect; a park ranger in forestry wearing a bulletproof vest for his job who

13

temporarily takes possession of a discarded firearm or firearm ammunition; a former member of the military who patriotically displays his old bulletproof vest and ammunition in his home; a person who constructively possesses his roommate's body armor while simultaneously possessing a firearm or single bullet; a person who dresses up as a police officer in a play and wears body armor as part of his or her costume while also possessing a firearm or bullet; a civil war reenactor; a person who wears a vest for his or her own protection after being threatened; and a person, similar to defendant, who possesses a family member's military vest and box of ammunition in his or her home. In support of his argument, defendant cites *People v. Madrigal*, 241 Ill. 2d 463, 468, 473 (2011) (invalidating an identity theft statute where punishing a significant amount of "wholly innocent conduct not related to the statute's purpose" was not "a rational way of addressing" a problem identified by the legislature (internal quotation marks omitted)), *People v. Zaremba*, 158 Ill. 2d 36, 42 (1994) (invalidating a statute that "potentially subjects wholly innocent conduct to punishment"), and *People v. Wick*, 107 Ill. 2d 62, 66 (1985) (invalidating a statute that "does not require an unlawful purpose").

¶ 37     As an initial matter, we agree with the State that just as an individual must knowingly possess the firearm or firearm ammunition, an individual must knowingly possess body armor in order to be found in violation of subsection (e) of section 24-1.1. See 720 ILCS 5/24-1.1(a) (West 2022) ("It is unlawful for a person to knowingly possess *** any *** firearm or any firearm ammunition if the person has been convicted of a felony ***."); see also *People v. Ramirez*, 2023 IL 128123, ¶ 22 (where an offense is possessory in nature and the statute does not include a specific mental state, "knowledge is the appropriate mental state"). Accordingly, we reject defendant's argument that subsection (e) of section 24-1.1 lacks a culpable mental state.

14

¶ 38 Moreover, defendant misapprehends the statute. Section 24-1.1(e) does not criminalize innocent conduct. The statute punishes conduct by felons—persons who have shown a willingness to violate the law and pose a heightened danger to public safety. See *Pepitone*, 2018 IL 122034, ¶ 26 ("Like the statute outlawing possession of any firearm or any firearm ammunition by a convicted felon (720 ILCS 5/24-1.1(a) (West 2016)), the statute [prohibiting a sexual predator or child sex offender from knowingly being present in any public park] makes the status of the defendant an element of the offense."); see also *Villareal*, 2023 IL 127318, ¶ 24 (statute increasing the penalty for the unlawful possession of a firearm or firearm ammunition in public without a FOID card when the person is a street gang member did not violate substantive due process where the statute was reasonable and rationally related to the purpose of curbing gang violence). Thus, "conduct that is innocent for most people is not innocent for those who have been convicted of certain offenses." *Pepitone*, 2018 IL 122034, ¶ 26. We note that a defendant must be a convicted felon and also be in possession of a firearm or firearm ammunition in order to fall under subsection (e). As noted above, the legislature did not specify that a defendant must be convicted of a violent felony to fall under the prohibition set forth in section 24-1.1(e). Accordingly, "*Madrigal* and its 'innocent conduct' predecessors are inapposite." *Id.* Thus, we reject defendant's argument that subsection (e) of section 24-1.1 is overbroad and in violation of due process. See *id.* ¶ 30 ("More fundamentally, the rational basis test does not require narrow tailoring; it only requires rationality. That is, the means chosen by the legislature need not be the best; they need only to be reasonable.").

¶ 39 Defendant next argues that section 24-1.1(e) is unconstitutionally vague because it does not provide ordinary persons with notice as to prohibited conduct and lacks explicit standards for law enforcement to apply the law, potentially leading to arbitrary and discriminatory enforcement. "Due process of law requires that the proscriptions of a criminal statute be clearly defined." *People*

15

*v. Maness*, 191 Ill. 2d 478, 483 (2000) (citing *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997)). To satisfy the vagueness doctrine, a criminal statute must meet two requirements—(1) "the statute must provide a person of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct so that he or she may act accordingly" and (2) "the statute must adequately define the offense in order to prevent arbitrary and discriminatory enforcement." *Id.* at 483-84.

¶ 40     Regarding the first requirement, we conclude that the statute at issue in the present case provides a person of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct. "[A] statute is unconstitutionally vague 'if its terms are so indefinite that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." ' " *Manness*, 191 Ill. 2d at 484 (quoting *Fagiano v. Police Board*, 98 Ill. 2d 277, 282 (1983), quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 299-300 (1979)). As stated *supra*, subsection (e) is not vague for lacking a requisite mental state because the mental state of knowledge applies to the entire UPWF statute. In addition, the statute clearly applies to both violent and nonviolent felony offenders. Furthermore, contrary to defendant's argument, the terms "wearing" and "possession" have well-established, common meanings that are readily discernible to persons of ordinary intelligence. In our view, a person of ordinary intelligence could read the statute and discern that it applies to any felon who knowingly possesses a firearm or firearm ammunition, while also wearing or possessing body armor. Accordingly, the statute meets the first requirement.

¶ 41     We also conclude that the statute meets the second requirement that it adequately defines the offense in order to prevent arbitrary and discriminatory enforcement. "To avoid being struck down as vague, a statute must provide explicit standards to regulate the discretion of governmental

16

authorities who apply the law." *Villareal*, 2023 IL 127318, ¶ 40 (citing *Maness*, 191 Ill. 2d at 484). In our view, the statute provides sufficiently clear guidelines for law enforcement to apply the law consistently. As stated *supra*, the elements of the offense—a felon knowingly possessing firearms or firearm ammunition while also wearing or possessing body armor—are clearly defined and do not allow for arbitrary or discriminatory enforcement.

¶ 42 Accordingly, we conclude that the statute provides adequate notice to ordinary citizens regarding the prohibited conduct, and it includes sufficient guidelines to regulate the discretion of law enforcement. Thus, we reject defendant's argument that section 24-1.1(e) is unconstitutionally vague.

¶ 43 Defendant next contends that section 24-1.1(e) is unconstitutional "because it punishes more culpable conduct less severely than the conduct at issue here." "It is the general rule that the legislature, under the State's police power, has wide discretion to prescribe penalties for defined offenses." *People v. Bradley*, 79 Ill. 2d 410, 417 (1980). "The legislature's power to fix penalties is, however, subject to the constitutional proscription which prohibits the deprivation of liberty without due process of law." *Id.* Our supreme court has " 'stated that the standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " *Id.* (quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 159 (1955)).

¶ 44 Defendant relies on *Bradley* in support of his assertion that section 24-1.1(e) violates due process. In *Bradley*, our supreme court held that a violation of the due process clause occurred when possession of a schedule IV controlled substance was punished as a Class 3 felony, which subjected the offender to a prison term of 1 to 10 years, while delivery of the same schedule IV controlled substance was punished as a Class 4 felony, which subjected the offender to a prison

17

term of 1 to 3 years. *Id.* at 418. In so holding, our supreme court noted that such an outcome was contrary to the purpose of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56$^{1}/_{2}$, ¶ 1402) , in which our legislature specifically included a codified statement of legislative intent that it intended to punish persons who traffic controlled substances more harshly than unlawful users of such substances. *Bradley*, 79 Ill. 2d at 418.

¶ 45    We find *Bradley* distinguishable from the present case. Here, unlike *Bradley*, our legislature did not include a codified statement of intent to punish more harshly individuals who wear or possess body armor while also possessing a firearm or firearm ammunition. However, it is clear the legislature found that felons who possess a firearm or firearm ammunition while wearing or possessing body armor present a greater threat to the safety of the public and law enforcement. Accordingly, the legislature's decision to punish more harshly felons who simultaneously possess firearms or firearm ammunition and body armor was reasonably designed to protect the public and law enforcement.

¶ 46    Defendant invites this court to conduct a cross-comparison analysis of section 24-1.1(e) with an additional offense set forth in the same statutory section, as well as several other offenses set forth in different statutes. Defendant maintains that section 24-1.1(e) imposes a harsher penalty for less egregious conduct than these other "more culpable" offenses. However, our supreme court has abandoned the cross-comparison analysis in proportionate penalties claims, finding such analysis unworkable. *People v. Sharpe*, 216 Ill. 2d 481, 521 (2005). In doing so, our supreme court noted that the cross-comparison analysis in proportionate penalties claims began with a citation to *Bradley*, a due process case. *Id.* at 493-94. Despite invalidating the cross-comparison analysis, our supreme court did not prevent defendants from raising challenges to penalties under the due process clause on the basis that the penalty was not reasonably designed to remedy the particular

18

evil targeted by the legislature. *Id.* at 522. However, our supreme court cautioned "that the cross-comparison challenge [would] not simply resurface as a due process challenge \*\*\*." *Id.* Accordingly, we decline defendant's invitation to conduct a cross-comparison analysis in this case. Because the penalty in this case was reasonably designed to remedy the evil targeted by the legislature—to deter felons from possessing firearms, firearm ammunition, and body armor—we reject defendant's argument that section 24-1.1(e) is unconstitutional "because it punishes more culpable conduct less severely than the conduct at issue here."

¶ 47       In sum, we conclude that subsection (e) of section 24-1.1 is neither overbroad nor vague. We also conclude that the penalty was reasonably designed to remedy the evil targeted by the legislature. Thus, we hold that subsection (e) of section 24-1.1 is not facially violative of due process.

¶ 48             2. Illinois Proportionate Penalties and Eighth Amendment Claims

¶ 49       Defendant next argues that the body armor enhancement included in the UPWF statute is unconstitutional as applied to him under both the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution. We disagree.

¶ 50       The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To establish a claim under the proportionate penalties clause, "a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009).

¶ 51 The eighth amendment prohibits "cruel and unusual punishments." U.S. Const., amend. VIII. The concept of proportionality is inherent in the prohibition of cruel and unusual punishment. *Graham v. Florida*, 560 U.S. 48, 59 (2010). A sentence must be "graduated and proportioned to both the offender and the offense." *Davis*, 2014 IL 115595, ¶ 18.

¶ 52 We reiterate that "[a]ll statutes carry a strong presumption of constitutionality." *Sharpe*, 216 Ill. 2d at 487. "[T]he party challenging the statute must clearly establish that it violates the constitution." *Id.* (citing *People v. Malchow*, 193 Ill. 2d 413, 418 (2000)). Whether a sentence violates the proportionate penalties clause is reviewed *de novo*. *People v. Cavazos*, 2023 IL App (2d) 220066, ¶ 63.

¶ 53 Here, defendant asserts that, applied to him, the enhancement set forth in subsection (e) of section 24-1.1, setting the sentencing range at 10 to 40 years in prison, is so grossly disproportionate to the offense that it shocks the moral conscience and constitutes cruel and unusual punishment. As noted, where, as here, a defendant makes an as-applied claim, the defendant must establish that the statute is unconstitutional as applied to his specific facts or circumstances. *People v. House*, 2021 IL 125124, ¶ 27. Defendant maintains that the sentencing enhancement for body armor violates the proportionate penalties clause in this case because (1) he was not committing or attempting to commit a violent crime when he simultaneously possessed the ammunition and bulletproof vest; (2) he did not possess the ammunition and bulletproof vest with the intent to commit a violent crime; (3) he did not have a firearm and had no means of firing the ammunition; and (4) he is a nonviolent offender with a nonviolent background.

¶ 54 However, we note that defendant, who was a convicted felon prohibited from possessing firearm ammunition, admitted that the firearm ammunition and body armor were his property when interviewed during the search. As defendant acknowledges, he had two prior felony theft

convictions. The evidence presented at defendant's sentencing hearing indicated that law enforcement also discovered stolen motorcycle parts during the search. The evidence further demonstrated that defendant was a suspect in several attempted car break-ins and a shooting incident, which led to the execution of the search warrant that led to the discovery of the firearm ammunition and bulletproof vest. The PSI indicated that defendant had been charged with "Aggravated Discharge of a Firearm (Class 1 Felony)" and "Unlawful Possession of Weapons by Felons (Class 3 Felony)" in Champaign County case No. 24-CF-184, which remained pending at the time the PSI was prepared. Defendant admitted to wearing the bulletproof vest occasionally, claiming he had been shot at in the past. The evidence further demonstrated that defendant had been photographed wearing the bulletproof vest while holding what appeared to be a gun, which defendant claimed to be a BB gun. Although no gun was recovered during the search, defendant claimed that he had recently disposed of the BB gun. In addition, defendant's cellmate, Hensley, advised law enforcement that defendant admitted he was involved in the shooting incident and that defendant disposed of the gun after the incident.

¶ 55      The legislature sought to impose a harsher punishment for felons who simultaneously possess a firearm or firearm ammunition and body armor. In our view, the facts of this case demonstrate why the legislature sought to do so. Defendant, who was previously twice convicted of felony theft, was found in possession of firearm ammunition, body armor, and stolen motorcycle parts. The evidence presented at sentencing also indicated that defendant was a suspect in several attempted car break-ins that led to shots being fired. Defendant's possession of firearm ammunition and body armor under the facts of this case demonstrates the seriousness of the offense. Thus, we conclude that the 14-year sentence, imposed pursuant to the enhancement in

21

subsection (e) of section 24-1.1, is not cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community.

¶ 56   We briefly note that defendant again requests that this court conduct a cross-comparison analysis, arguing that his conduct "contrasts with more culpable and dangerous conduct" punished less harshly. As stated *supra*, our supreme court has abandoned the cross-comparison analysis in proportionate penalties claims. *Sharpe*, 216 Ill. 2d at 521. Consequently, we decline defendant's invitation to conduct a cross-comparison analysis in the instant case.

¶ 57   Accordingly, defendant's as-applied proportionate penalties argument fails. Likewise, because defendant failed to show that subsection (e) of section 24-1.1 violated the proportionate penalties clause as applied to him, his eighth amendment claim also fails. See *People v. Smallwood*, 2024 IL App (5th) 210407, ¶ 44 (because the defendant "failed to show his sentence violated the proportionate penalties clause, his eighth amendment claim also fail[ed]").

¶ 58                              3. Second Amendment Claim

¶ 59   Defendant argues that the UPWF statute, as well as the body armor enhancement, violate his individual right to bear arms under the United States Constitution and the Illinois Constitution, both facially and as applied to him.[3] We disagree.

¶ 60   "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "The United States Supreme Court has 'recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun' inside and outside the home 'for self-defense.' " *Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *New*

---

[3]Although defendant generally references the Illinois Constitution, he makes no specific argument in his brief that the UPWF statute violates the Illinois Constitution. Accordingly, we find any argument in this regard forfeited.

22

*York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8-9 (2022), and citing *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)).

¶ 61 In *Bruen*, the United States Supreme Court set out the following two-part test for determining whether laws regulating conduct protected by the second amendment were valid under the constitution:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 15 (quoting *Konigsberg v. State Bar*, 366 U.S. 36, 50 n.10 (1961)).

Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 62 Defendant, here, was charged with UPWF, based on his simultaneous possession of firearm ammunition and body armor. The UPWF statute provides as follows:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

23

The body armor enhancement provides as follows: "A violation of this Section while wearing or in possession of body armor as defined in Section 33F-1 is a Class X felony punishable by a term of imprisonment of not less than 10 years and not more than 40 years." *Id.* § 24-1.1(e). With this in mind, we consider defendant's argument that the UPWF statute violates the second amendment both facially and as applied to him.

¶ 63    We initially note that many Illinois Appellate Courts, including this court, have rejected facial constitutional challenges to statutes prohibiting felons from possessing firearms based on the conclusion that felons are not protected under the second amendment. See *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25 (holding that "a defendant who is in the process of committing a felony while possessing an operational firearm does not fall into the category of 'the people' protected by the second amendment"); *Burns*, 2024 IL App (4th) 230428, ¶¶ 21-22 (rejecting the defendant's argument that the UPWF statute violates the second amendment on its face where *Bruen* did not apply to the defendant who was a felon and, thus, not a law-abiding citizen); *People v. Welch*, 2025 IL App (1st) 231116, ¶ 57 ("Because the second amendment only protects the rights of law-abiding citizens to bear arms, the *Bruen* analytical framework does not apply to the [offense of] UPWF."); *People v. Cadengo*, 2025 IL App (4th) 240568, ¶ 72 ("Because of defendant's felony conviction, she is not a 'law-abiding citizen,' so the second amendment's guarantees do not apply to her."); *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 16 (upholding the UPWF statute and concluding that *Bruen* "does not apply to felons").

¶ 64    Following this line of cases, we conclude that defendant, here, does not fall into the category of "the people" protected by the second amendment. It is undisputed that at the time defendant possessed the firearm ammunition and body armor, he was a convicted felon and, thus, was not a law-abiding citizen. Moreover, it is our view that the constitutional "right of the people

24

to keep and bear Arms" does not extend to body armor. In light of our conclusion that defendant was not a law-abiding citizen protected under the second amendment and that his conduct did not fall under the purview of the second amendment, we need not address the second step of the analysis in *Bruen*, which considers whether the regulation is consistent with this nation's historical tradition of firearm regulation. Thus, we reject defendant's argument that the UPWF statute and body armor enhancement violate the second amendment on its face.

¶ 65 We next turn to defendant's as-applied constitutional challenge to the UPWF statute. Defendant claims that he is a non-violent felon with a criminal history related only to theft. Defendant maintains that "[n]othing in the historical analogues pertaining to dangerousness justifies imposing on [him] a lifetime ban from possessing a firearm after serving his prior sentences for non-violent offenses." As noted, "an as-applied challenge depends on the particular facts and circumstances of the party." *Burns*, 2024 IL App (4th) 230428, ¶ 11 (citing *Rizzo*, 2016 IL 118599, ¶ 24).

¶ 66 Defendant's as-applied challenge fails for reasons similar to his facial challenge. That is, *Bruen* only applies to law-abiding citizens. See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant."); *Welch*, 2025 IL App (1st) 231116, ¶ 60 (rejecting the defendant's as-applied challenge on the basis that "*Bruen* does not apply to felons"); *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 26 (rejecting a challenge that sought to create a distinction between "violent" felons and "nonviolent" felons for purposes of *Bruen* and the second amendment). Because defendant is not a law-abiding citizen based on his prior felony theft offenses, it does not matter that his prior

offenses were "non-violent." Accordingly, we hold that the UPWF statute is constitutional as applied to him.

¶ 67                                    B. Excessive Sentence Claim

¶ 68    Defendant additionally argues that his 14-year prison sentence was excessive in light of the nature of the offense, his rehabilitative potential, and the trial court's reliance on an improper factor in aggravation. We disagree.

¶ 69    "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). A trial judge abuses its discretion when the sentence is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). A reviewing court defers to the trial judge's sentencing decisions because the trial judge "is in the best position to 'analyze the acts constituting the crime and a defendant's credibility, demeanor, general moral character, mentality, social environments, habits, age, and potential for rehabilitation.' " *People v. Tijerina*, 381 Ill. App. 3d 1024, 1039 (2008) (quoting *People v. Ramos*, 353 Ill. App. 3d 133, 137 (2004)). This court may not overturn a sentence merely because we might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10.

¶ 70    Illinois courts have consistently recognized that sentences within the prescribed statutory range are presumed proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). When a sentence falls within the statutory range, the sentence will not be deemed excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. Put another way, an abuse of discretion may be found, even if the sentence is within the statutory

range, if it is contrary to the purpose and spirit of the law. *Id.* The spirit and purpose of the law are promoted when the sentence gives sufficient consideration to both the seriousness of the offense and the defendant's rehabilitative potential. *Boclair*, 225 Ill. App. 3d at 335.

¶ 71 We presume the sentencing court considered all relevant mitigating factors, absent some contrary evidence. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29. Thus, it is the defendant's burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper. *Id.*

¶ 72 Here, the trial court sentenced defendant to 14 years—a sentence only four years above the mandatory minimum sentence. Accordingly, we presume the court's sentence was proper, and we will not find the sentence excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Weiser*, 2013 IL App (5th) 120055, ¶ 33.

¶ 73 The record in this case reflects that the trial court considered the PSI, the evidence presented at the sentencing hearing, defendant's statement in allocution, and the arguments of the parties. The record further reveals that the court carefully balanced the relevant statutory factors in aggravation and mitigation. In aggravation, the court found the evidence of defendant's potential involvement in the shooting incident to be relevant and reliable for sentencing purposes, while acknowledging that such evidence was insufficient to prove defendant's guilt beyond a reasonable doubt. The court accorded only "some weight" to this evidence, indicating that it placed greater weight on other evidence. The court considered defendant's criminal history, which included six traffic offenses, four misdemeanors, and two felony theft convictions. The court noted that defendant committed the current offense while he was on probation for felony theft. The court

27

found defendant's mental health and substance abuse issues were a "double-edged sword," noting that such evidence could provide a basis for leniency or could demonstrate that defendant would continue to engage in criminal behavior. The court specifically noted that defendant had failed to take advantage of opportunities to address his substance abuse while on probation. The court also noted that the need for deterrence was an aggravating factor.

¶ 74     In mitigation, the trial court noted that defendant had a difficult childhood and that he had graduated high school, despite his difficult childhood. The court also noted that defendant possessed an automotive mechanic certification and had aspirations to further his education. The court noted that defendant lacked intent to cause or threaten serious harm by simply possessing firearm ammunition and body armor. The court also considered defendant's traumatic brain injury, mental health issues, and substance abuse issues. The court later found there were "serious mental health issues" that could be viewed as an intellectual disability, which was a factor in mitigation.

¶ 75     In our view, the factors considered by the trial court provided a sufficient basis for the 14-year prison sentence, and the court's sentence was on the lower end of the statutory range of 10 to 40 years. Thus, under the facts and circumstances of this case, we do not find that defendant's sentence was excessive or that the court abused its discretion in sentencing defendant.

¶ 76     Defendant, here, argues that his sentence was excessive because the offense was nonviolent, he had no prior violent felony convictions, he had never been to prison, the offense stemmed from drug addiction, he cooperated with law enforcement, he had attempted to obtain employment, he possesses skills that make him employable, and he has strong family support. The majority of defendant's arguments essentially ask this court to reweigh the sentencing factors. While a trial court's sentencing discretion is "not unfettered" (*People v. O'Neal*, 125 Ill. 2d 291, 297 (1988)) and reviewing courts were not meant to be a "rubber stamp" for the sentencing

28

decisions of the trial court (*People v. Woodson*, 2024 IL App (1st) 221172, ¶ 89), it is well settled that this court "must not substitute its judgment for that of the trial court merely because [we might] have weighed" the pertinent sentencing factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). While we decline defendant's invitation to reweigh the factors, we will address two of his specific arguments.

¶ 77    First, we briefly address defendant's argument that the trial court improperly considered defendant's previous diagnosis of oppositional defiant disorder and substance abuse as aggravating factors. The court noted that defendant had been diagnosed with oppositional defiant disorder, which was "suggestive of someone that's not willing to follow instruction or—or obey authority." The court found defendant's substance abuse and mental health issues "a double-edged sword" because they could be viewed as a basis for sympathy but could also be viewed as something that demonstrated defendant would continue to engage in criminal behavior. We find no error in the court's consideration of defendant's mental health and substance abuse issues. See *People v. Thompson*, 222 Ill. 2d 1, 42-43 (2006) ("This court has repeatedly held that evidence of a defendant's mental or psychological impairments may not be inherently mitigating, or may not be mitigating enough to overcome the evidence in aggravation."); see also *People v. Madej*, 177 Ill. 2d 116, 138 (1997) ("[A] history of substance abuse is a double-edged sword at the aggravation/mitigation phase of the penalty hearing," and the sentencer is not required to consider drug abuse history as mitigating). We also note that the court later found there were "serious mental health issues" that could be viewed as an intellectual disability, which was a factor in mitigation. Thus, we reject defendant's argument in this regard.

¶ 78    We also reject defendant's argument that the trial court erred by considering a factor inherent in the offense—specifically, his possession of the bulletproof vest. In support of this

29

argument, defendant relies on the following isolated comment made by the court: "The presence and ever-present nature, according to the Defendant's own words, of the body armor would suggest a strong probability or propensity for—for violence." After carefully reviewing the entirety of the court's comments at the sentencing hearing, we conclude the court was acknowledging defendant's assertion that he had worn the body armor because he had previously been shot at and was concerned for his own safety. In our view, the court was merely observing that the possession of body armor can be associated with violence in certain circumstances. We note that immediately preceding the above-referenced statement, the court stated that the facts of defendant's offense did "not suggest a crime of violence." The court also found the fact that defendant did not contemplate that his conduct would cause or threaten serious harm to another was a mitigating factor. Under these circumstances, we conclude that defendant has failed to affirmatively establish, as is his burden, that the sentence was based on improper considerations. See *Etherton*, 2017 IL App (5th) 140427, ¶ 29 (we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper). This is especially true where the court sentenced defendant to 14 years—a sentence on the low end of the 10 to 40 sentencing range—and highlighted at sentencing multiple aggravating factors, including defendant's criminal history, the fact that defendant was on probation when he committed the offense, deterrence, and defendant's alleged involvement in a shooting.

¶ 79                                   III. CONCLUSION

¶ 80     For the foregoing reasons, we affirm the judgment and sentence of the circuit court of Champaign County.

¶ 81     Affirmed.

*People v. Spears*, 2026 IL App (5th) 240625

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Champaign County, No. 23-CF-1239; the Hon. Roger B. Webber, Judge, presiding. |
| **Attorneys for Appellant:** | DePaul University Legal Clinic, of Chicago (Elizabeth A. Botti, of counsel, and Courtney Hauck and Caitlin Hamilton, law students), for appellant. |
| **Attorneys for Appellee:** | Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Patrick D. Daly, and Hiram Fenjac, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |